## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LA PLAYITA CICERO, INC., d/b/a** | ) | |
| **SERENATA RESTAURANT AND BAR,** | ) | |
| **and GERARDO MEZA,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 CV 1702** |
| | ) | |
| **THE TOWN OF CICERO, a municipal** | ) | **Judge John Z. Lee** |
| **corporation, LARRY DOMINICK, in his** | ) | |
| **official and individual capacity, PAUL** | ) | |
| **DEMBOWSKI, LARRY POLK, and** | ) | |
| **SERGE ROCHER, in their individual** | ) | |
| **capacities,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs La Playita Cicero, Inc., d/b/a Serenata Restaurant and Bar ("Serenata") and its owner, Gerardo Meza ("Meza"), sued Defendants The Town of Cicero ("Cicero"), Larry Dominick ("Dominick"), Paul Dembowski, Larry Polk, and Serge Rocher under 28 U.S.C. § 1983 and tort theories. Plaintiffs allege Defendants falsely accused Meza of battery and targeted Serenata for liquor and other ordinance violations in an effort to force Meza to close Serenata all because Meza is Hispanic and supported one of Dominick's political rivals. Defendants contend that they did not specifically target Serenata to enforce town ordinances, and instead, they wanted to protect the public from Serenata's long history of violations. Defendants moved for summary judgment, arguing that the applicable statutes of limitations bar Plaintiffs' claims. For the reasons stated herein, the Court grants in part and denies in part Defendants' motion.

## Procedural History

The case before this Court ("*La Playita I*") presents common issues of fact and law with *La Playita Cicero, Inc. v. Town of Cicero* ("*La Playita II*"), 11-CV-5561, a case pending before

Judge Dow in this district.  The relevant, rather tortured procedural history of the two cases is as follows.

On January 5, 2007, Cicero filed an emergency motion for an injunction in the Illinois Circuit Court of Cook County, Chancery Division, to shut down the second floor of Serenata, alleging that Meza operated it without a valid building or occupancy permit.  In the same suit, Plaintiffs filed a counterclaim against Cicero on April 13, 2007, alleging § 1983 and state law violations based on events that had occurred between July 2006 and April 2007.  While the counterclaim against Cicero was approaching trial in state court, Plaintiffs filed a separate complaint on February 11, 2011, in the Circuit Court against Defendants, alleging additional § 1983 and tort causes of action stemming from Defendants' conduct that had occurred between July 2006 and October 2010.  On March 11, 2011, Defendants removed that second complaint (spanning the time period from July 2006 to October 2010) to the Northern District of Illinois, which formed the instant lawsuit, *La Playita I*.

Five months later, on August 11, 2011, Plaintiffs voluntarily dismissed the counterclaim in the first state court action, and an agreed order provided that their claims could be refiled in the Northern District of Illinois.  Plaintiffs refiled the counterclaim (spanning the time period from July 2006 to April 2007) as a complaint in the Northern District of Illinois four days later, and that case, *La Playita II*, was assigned to Judge Dow.

Given the factual and legal similarities of *La Playita I* and *La Playita II*, this Court and Judge Dow conducted a joint hearing on February 13, 2013.  At the hearing, Plaintiffs asked the Courts to consolidate the two cases.  In response, Defendants argued that consolidating the cases would undermine their statute of limitations defense in *La Playita I* because the claims comprising *La Playita I* were filed four years after those filed in *La Playita II*.  After much

discussion, this Court and Judge Dow instructed the Defendants to file a motion for summary

judgment in *La Playita I* based on the statute of limitations. The Court noted it would be in a

better position to determine how to proceed with the two cases once it addressed the merits of the

statute of limitations argument in *La Playita I*. After the hearing, Defendants filed a motion for

summary judgment based on the statute of limitations for the claims asserted by Plaintiffs in *La

Playita I*.[1]

### **Factual Background**[2]

Gerardo Meza owned Serenata Restaurant and Bar prior to its closure in December 2009.

(Defs.' LR 56.1(a)(3) ¶¶ 1, 33.) Larry Dominick is Town President and Liquor Commissioner of

Cicero. (Pls.' LR 56.1(b)(3)(C) ¶¶ 1, 5.) Dominick delegated the authority for issuing liquor

violations, fines, and suspension to the Deputy Liquor Commissioner, Paul Dembowski

("Dembowski"). (*Id.* ¶ 6.) The following events between the parties took place over a four-year

period, from November 2006 to October 2010. During this time period, Defendants accused

Serenata of numerous ordinance violations. Plaintiffs claim they were unfairly targeted by

Defendants because Meza is Hispanic and showed support for Dominick's political rival.

---

[1]      The Court only addresses Defendants' statute of limitations argument, which contends that
Plaintiffs' claims should be dismissed to the extent that the claims arise out of events that took place prior
to the applicable statute of limitations period. The Court does not address Defendants' substantive
challenge to Plaintiffs' claims to the extent the claims arise out of conduct that occurred within the
applicable statute of limitations period, thereby not triggering statute of limitations concerns.

[2]      Plaintiffs argue that because Defendants' motion for summary judgment does not cite
Defendants' statement of facts on several occasions, Defendants have failed to comply with Local Rule
("LR") 56.1. (Pls.' Resp. Defs.' Mot. Summ. J. 3 n.2.) LR 56.1 requires the statement of material facts to
consist of short numbered paragraphs with "specific references to the affidavits, parts of the record, and
other supporting materials[.]" Defendants' statement of facts consists of short numbered paragraphs with
specific references to supporting materials and generally complies with LR 56.1. In determining the
undisputed material facts of the case, the Court relies on the admissible portions of Defendants' and
Plaintiffs' statement of facts, rather than Defendants' motion for summary judgment. For these reasons,
the Court rejects Plaintiffs' argument that Defendants' motion for summary judgment and statement of
facts should be stricken for failure to comply with LR 56.1. The Court, however, strikes ¶ 4 of
Defendants' statement of facts because Defendants fail to cite any supporting material for it.

Defendants, on the other hand, claim that they had probable cause to issue the citations and were acting to protect Cicero's residents from Plaintiffs' repeated violations.

On November 10, 2006, an alleged disturbance occurred at Serenata in which a security guard was struck in the face. (Defs.' LR 56.1(a)(3) ¶ 13.)[3] Defendants issued Serenata a citation for the incident. (*Id.*)

In December 2006, Dembowski served Plaintiffs with a notice of hearing for allegedly serving alcohol to a minor. (Pls.' LR 56.1(b)(3)(C) ¶ 8.) Plaintiffs deny that Dembowski had probable cause to issue the citation. (*Id.*)

Later that month, Dembowski served Plaintiffs with another notice of hearing for allegedly violating Serenata's entertainment license by playing live music. (*Id.* ¶ 9.) Then, on New Year's Eve, Dembowski and Cicero Police Officers ordered all patrons out of Serenata on the basis that the second floor of the restaurant did not have a valid permit. (*Id.* ¶ 10; Defs.' LR 56.1(a)(3) ¶ 14.)

Four days later, on January 4, 2007, Dembowski served Plaintiffs with an order of closure for seven days and a motion for immediate closure. (Pls.' LR 56.1(b)(3)(C) ¶ 11.)[4] In

---

[3]     Plaintiffs object to Defendants' LR 56.1(a)(3) ¶ 13, along with Defendants' other LR 56.1(a)(3) statements based on citations and complaints issued to Serenata, as constituting inadmissible hearsay. (Pls.' Resp. Defs.' Mot. Summ. J. 3-4.) Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, however, the citations and complaints are offered to demonstrate that Defendants made certain allegations against the Plaintiffs. The citations and complaints are not offered to prove that the underlying factual allegations forming the basis of the citations and complaints actually occurred. While Plaintiffs deny that Defendants possessed valid grounds to issue the citations, Plaintiffs do not dispute that Defendants issued the citations and complaints. Thus, Defendants' LR 56.1(a)(3) statements based on citations and complaints issued to Serenata are not offered for the truth of the matter asserted and are deemed admitted to demonstrate that Defendants made certain allegations against the Plaintiffs. The Court rejects Plaintiffs' argument that Defendants' motion for summary judgment and statement of facts should be stricken for failure to rely on admissible evidence.

[4]     Defendants move to strike certain Plaintiffs' statement of facts (¶¶ 9-11, 14, 15, 21, 26, 30-35, 37, 39, and 42) on several grounds, including that the statements are duplicative, violate Federal Rule of Evidence 1002, are supported by Meza's self-serving affidavit, and contain improper legal conclusions. (Defs.' Reply Supp. Mot. Summ. J. 14.) The Court will consider Plaintiff's statements that add additional

response, Plaintiffs' counsel appeared before the Cicero Liquor Commission the next day, and the hearing officer ruled that Serenata could reopen. (*Id*. ¶ 12.) Later that day, however, Cicero obtained an *ex parte* Temporary Restraining Order ("TRO") prohibiting Serenata from operating the restaurant after alleging that the second floor of Serenata also violated various building codes. (*Id*. ¶ 13; Defs.' LR 56.1(a)(3) ¶ 15.) Five days later, the Chancery Court dissolved the TRO. (Pls.' LR 56.1(b)(3)(C) ¶ 14.)

On January 12, 2007, just two days after the Chancery Court had dissolved the TRO, Cicero issued Plaintiffs another citation alleging that Meza had failed to report an altercation at Serenata to the Cicero Police Department. (Defs.' LR 56.1(a)(3) ¶ 17.)

The next month, Dembowski suspended Plaintiffs' liquor license for seven days pursuant to 235 Illinois Compiled Statute § 5/7-5 for the November 10, 2006, and January 12, 2007, incidents. (Pls.' LR 56.1(b)(3)(C) ¶ 15.) Plaintiffs contend that there was no immediate threat to the welfare of the community, which is a required element of the statute, and a hearing was scheduled for February 8. (*Id*. ¶¶ 15-16.) In response, Serenata filed an emergency motion to vacate the seven-day suspension, but the suspension was upheld because Meza could not appear at the February 8 hearing. (*Id*. ¶¶ 17-18.)

In late February 2007, Meza learned of a new Cicero Liquor Control Ordinance which required Serenata and other "A" liquor license holders to close at 11:00 p.m. (*Id*. ¶ 19.) When

---

information supported by admissible evidence. Federal Rule of Evidence 1002 is inapplicable because Plaintiffs do not attempt to prove the contents of an original writing. Instead, Plaintiffs contend that Defendants did not have adequate cause to issue the citations and complaints. Meza's sworn affidavit, even if self-serving, may be properly considered as evidence. *See e.g.*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). While the Court does not treat Meza's version of events contained in his affidavit as undisputed material fact, the Court may rely on the affidavit to demonstrate that Plaintiffs contest Defendants' version of the underlying factual allegations that form the basis of the citations and complaints. Finally, the Court agrees that Plaintiffs' statement of facts contain numerous inadmissible legal conclusions. To the extent it does, the Court disregards them.

Serenata closed on February 27, 2007, shortly before 11:00 p.m., Cicero Police Officers were waiting outside Serenata to see if Serenata would stay open past 11:00 p.m.  (*Id.* ¶ 20.)

Serenata continued to come under scrutiny.  On March 1, 2007, Cicero Police Officers investigated an automobile accident and arrested the driver for driving under the influence of alcohol.  (Defs.' LR 56.1(a)(3) ¶ 19.)  The driver was under twenty-one years of age, and the Officer alleged that the driver had been served alcohol at Serenata prior to the crash.  (*Id.*)

The following month, Dembowski suspended Serenata's liquor license for another seven days and served Plaintiffs with an additional motion for immediate closure due to the March 1, 2007, incident.  (*Id.* ¶ 20; Pls.' LR 56.1(b)(3)(C) ¶ 21.)  A hearing officer sustained the order suspending Serenata's liquor license for seven days.  (Pls.' LR 56.1(b)(3)(C) ¶ 22.)  In response, Plaintiffs filed an emergency TRO, and the Chancery Court issued a TRO enjoining Cicero from closing Serenata.  (*Id.* ¶ 23.)

On April 13, 2007, Plaintiffs filed a counterclaim in response to Cicero's January 5, 2007, motion for a TRO, claiming that the liquor citations Serenata received between July 2006 and April 2007 were issued by Defendants in retaliation for Meza speaking out publicly against Dominick and because Meza is Hispanic.  (Defs.' LR 56.1(a)(3) ¶¶ 21-22; Ex. L to *id.* ¶ 22.)

Even after Plaintiffs filed their counterclaim, Defendants continued to issue Serenata citations.  In July 2007, Cicero charged Serenata with unpaid tickets and posting a sign without a permit; both charges were later dismissed.  (Pls.' LR 56.1(b)(3)(C) ¶¶ 23-24.)  On September 10, 2007, Cicero sustained three liquor citations that had been issued on September 26, 2006, December 31, 2006, and January 12, 2007, against Serenata and issued an order revoking its liquor license.  (*Id.* ¶ 26.)  Serenata's liquor license was confiscated the next day, and on September 12, 2007, the Cicero police ordered Serenata closed.  (*Id.* ¶ 27.)

Less than a month later, the Illinois Liquor Commission ordered that Serenata was entitled to an automatic stay of the revocation of its liquor license. (*Id.* ¶ 29.) On January 7, 2008, the Illinois Liquor Commission reversed Cicero's revocation of Serenata's liquor license and instead instituted a ten-day suspension. (*Id.* ¶ 30; Defs.' LR 56.1(a)(3) ¶ 23.) The Illinois Liquor Commission eventually upheld the January 12, 2007, citation (Defs.' LR 56.1(a)(3) ¶ 23), but found that the Cicero Liquor Commission had failed to provide sufficient proof to support its findings as to the other two citations. (Pls.' LR 56.1(b)(3)(C) ¶ 30.)

Defendants persisted in their investigation of Serenata. On January 31, 2008, Dembowski conducted an undercover sting operation at Serenata, and an individual under the age of twenty-one was able to order alcohol. (*Id.* ¶ 31.) As a result of the sting operation, Dembowski served Plaintiffs with yet another order suspending Serenata's liquor license for seven days. (*Id.* ¶ 32.) On April 21, 2008, a hearing officer suspended Serenata's liquor license for thirty days and issued a $2000.00 fine. (*Id.* ¶ 33; Defs.' LR 56.1(a)(3) ¶ 24.)

Shortly after the thirty-day suspension had been lifted, Dembowski conducted another undercover sting operation at Serenata and again accused Serenata of serving alcohol to a minor. (Pls.' LR 56.1(b)(3)(C) ¶ 34.) This sting operation resulted in another thirty-day suspension of Serenata's liquor license and another $2000.00 fine. (*Id.* ¶ 37; Defs.' LR 56.1(a)(3) ¶ 27.) The following month, the Illinois Liquor Commission upheld the April 21, 2008, suspension of Serenata's liquor license but cautioned the Cicero Commissioner to prove future cases within a seven-day closure period to protect against the appearance of discriminatory use of its summary closure authority. (Pls.' LR 56.1(b)(3)(C) ¶ 35.)

In late July 2008, Plaintiffs' counsel complained before the Cicero Liquor Commission that other liquor establishments in Cicero were not receiving as severe penalties as Serenata for

similar violations. (Defs.' LR 56.1(a)(3) ¶ 29.) About three months later, on October 28, 2008, the Cicero Liquor Commission conducted an investigation of Serenata and issued a citation alleging that no manager was on duty. (*Id.* ¶ 30.) This incident resulted in yet another seven-day suspension of Serenata's liquor license and a $500.00 fine. (*Id.*; Pls.' LR 56.1(b)(3)(C) ¶ 39.)

When Meza attempted to renew Serenata's liquor license in December 2008, he was unable to do so because Cicero had entered default judgment on various Administrative Ordinance citations, although Meza alleges Cicero previously agreed that it would dismiss the citations. (Pls.' LR 56.1(b)(3)(C) ¶ 40.)

Defendants continued to investigate Serenata for ordinance violations in 2009. In April 2009, Cicero Police again searched Serenata based on a report that a group of underage girls were drinking at Serenata, but the police did not find a group of girls or any underage drinking. (*Id.* ¶ 44.)

On July 24, 2009, Cicero Police came to Serenata and told Meza that Cicero was closing Serenata because Serenata did not have a valid business license. (*Id.* ¶ 45.) Police Superintendent Lori Lelis told customers they had to leave, and the customers were not given time to finish their food or pay their bills. (*Id.*) Afterwards, Meza signed a settlement agreement in which he agreed to close Serenata for several days, pay a fine, and waive any claims related to the citation for operating without a business license. (Defs.' LR 56.1(a)(3) ¶ 32.)

Five days after Cicero Police closed Serenata, Dominick issued Serenata yet another $500.00 fine and a five-day suspension of its liquor license for not having a valid business license. (Pls.' LR 56.1(b)(3)(C) ¶ 47.)

On October 3, 2009, Dembowski, Officer Larry Polk ("Polk"), and Serge Rocher ("Rocher") conducted another sting operation and accused Serenata of serving alcohol to two

underage women. (*Id.* ¶ 48.) When Meza asked for the identification of the women, Dembowski and Polk refused. (*Id.* ¶ 49.) There was an ensuing altercation between Meza, Dembowski, and Rocher, and Polk arrested Meza alleging that Meza battered Dembowski and Rocher. (*Id.* ¶¶ 50-51.) Dembowski issued Serenata a citation as a result of the incident, and later that month, on October 13, 2009, Cicero issued a notice of hearing seeking the revocation of Serenata's liquor license. (*Id.* ¶¶ 55-56.)

The following month, Meza's bank foreclosed on the property at Serenata, and on December 27, 2009, Meza was forced to close Serenata. (*Id.* ¶¶ 57-58.) Meza was eventually found guilty of one count of battery and not guilty of the other count on September 14, 2010, and on October 28, 2010, Meza's motion for a new trial for his battery citation was granted. (*Id.* ¶ 59.)

## Discussion

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate for cases in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *Id.* at 321-22.

Plaintiffs assert three § 1983 causes of action—equal protection, First Amendment, and due process—against Defendants. The statute of limitations in § 1983 cases is governed by the state law limitations period in personal injury actions. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). In Illinois, the statute of limitations for personal injury actions is two years under 735

Illinois Compiled Statute § 5/13-202. *Id.* at 773; *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998).

The statute of limitations for a § 1983 claim "begins to run when a reasonable plaintiff knew or should have known of facts that would support a charge of discrimination." *Kuemmerlein v. Bd. of Educ. of Madison Metro. Sch. Dist.*, 894 F.2d 257, 261 (7th Cir. 1990). "[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act became painful." *Kelly v. City of Chi.*, 4 F.3d 509, 512 (7th Cir. 1993) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). For acts outside of the statute of limitations, the continuing violation doctrine may allow "a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999) (internal citation omitted).

Plaintiffs also bring three tort causes of action—malicious prosecution, abuse of process, and intentional infliction of emotional distress—against Defendants. The Illinois Tort Immunity Act provides a one-year statute of limitations for actions "commenced against a local entity or any of its employees[.]" 745 Ill. Comp. Stat. 10/8-101(a) (West 2010); *see also Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 761-62 (N.D. Ill. 2012). Because the Defendants are comprised of a local entity, the Town of Cicero, and its employees, Plaintiffs' tort causes of actions are governed by a one-year statute of limitations.

Defendants contend that Plaintiffs' § 1983 and tort causes of action are barred completely by the two and one-year statute of limitations. On the other hand, Plaintiffs contend that, to the extent that their claims are based upon events that occurred outside of the statute of limitations, such events still may properly be considered under the continuing violation doctrine. Plaintiffs

filed suit on February 11, 2011, in Cook County Circuit Court, and Defendants removed the case to the Northern District of Illinois. Thus, the operative date with respect to Plaintiffs' §1983 claims is February 11, 2009, and the operative date with respect to Plaintiffs' state law tort claims is February 11, 2010. With these dates in mind, the Court reviews each of Plaintiffs' claims in turn.

## I.    § 1983 – Equal Protection Claim

In their equal protection claim, Plaintiffs allege that Defendants discriminated in the enforcement of ordinance violations against Plaintiffs. In their brief, Plaintiffs clarify that their equal protection claim is based on three theories: (1) an orchestrated campaign of harassment against Plaintiffs; (2) selective enforcement based on the exercise of Plaintiffs' First Amendment rights; and (3) race discrimination. (Pls.' Resp. Defs.' Mot. Summ. J. 9.) For the reasons discussed below, to the extent that Plaintiffs' equal protection claims arise out of events that took place prior to February 11, 2009, the Court holds that such claims are barred by the statute of limitations.

### A.  Claim Based Upon an Orchestrated Campaign of Harassment

Plaintiffs assert a "class of one" equal protection violation and allege that Defendants have engaged in a campaign of harassment by targeting Serenata and repeatedly issuing citations for ordinance violations after Meza had stopped supporting Dominick politically in July 2006. Plaintiffs complain of "an orchestrated campaign of official harassment directed against [them] out of sheer malice." *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). Because Plaintiffs knew or should have known of their "class of one" equal protection claim prior to February 11, 2009, this claim is barred by the two-year statute of limitations.

From July 2006 through April 2007, Defendants issued Serenata citations for numerous alleged violations, including serving alcohol to minors on multiple occasions, violating the terms of its entertainment license, refurbishing the second floor without a business license, and failing to report an altercation. (Pls.' LR 56.1(b)(3)(C) ¶¶ 8, 9, 11; Defs.' LR 56.1(a)(3) ¶¶ 15, 17, 19.) Defendants also ordered all patrons out of Serenata on New Year's Eve, enacted an ordinance that required Serenata to close at 11:00 p.m., and waited outside Serenata to see if it would violate the new ordinance. (Pls.' LR 56.1(b)(3)(C) ¶¶ 10, 19. 20.) Furthermore, Defendants ordered Serenata closed for seven days and obtained an *ex parte* TRO prohibiting Serenata from operating the second floor of the restaurant (*id.* ¶¶ 11, 13), both of which were later dissolved by an administrative hearing officer and the Illinois Circuit Court, respectively. (*Id.* ¶¶ 12, 14.)

Based on these events, Plaintiffs filed a counterclaim against Defendants on April 13, 2007, alleging in part that "[s]ince in or about July 2006 and continuing to the present, Cicero has engaged in a *campaign of harassment* and frivolous filings against Serenata in violation of Serenata's due process and *equal protection rights*[.]" (Verified Counterclaim ¶ 5, Ex. 3 to Pls.' LR 56.1(b)(3)(C) (emphasis added).) Count I of Plaintiffs' counterclaim is labeled "§ 1983 - Equal Protection Violations" and states "[t]he actions of Defendant against Plaintiff violated its rights guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." (*Id.* ¶ 17.) Not only did Plaintiffs know that they had a "class of one" equal protection claim due to Defendants' alleged campaign of harassment prior to February 11, 2009, Plaintiffs actually asserted their "class of one" equal protection claim in their April 2007 counterclaim.

Based upon their own counterclaim, it is apparent that Plaintiffs knew that the pre-February 11, 2009, events gave rise to a "class of one" equal protection claim. But, even if

Plaintiffs had not filed the counterclaim, the Court finds that a reasonable person should have known of the claim prior to February 11, 2009. Indeed, in addition to the events described above, Defendants continued to target Serenata from April 2007 through February 2009 by issuing numerous additional citations for ordinance violations and orders for closure. For example, in July 2007, Cicero charged Serenata with failing to pay tickets and for posting a sign without a permit; those charges were later dismissed. (Pls.' LR 56.1(b)(3)(C) ¶¶ 23-24.) In September 2007, Cicero issued an order revoking Serenata's liquor license and Cicero Police ordered Serenata closed; the revocation order was later reversed. (*Id*. ¶¶ 26-27, 30.) Dembowski conducted multiple undercover sting operations at Serenata between January 2008 and May 2008, which resulted in additional suspensions of Serenata's liquor license. (*Id*. ¶¶ 31-32, 34, 37.) Plaintiffs' counsel even complained before the Cicero Liquor Commission in July 2008 that other liquor establishments in Cicero were not receiving as severe of a penalty as Serenata for similar violations. (Defs.' LR 56.1(a)(3) ¶ 29.) Despite this, in October 2008, the Cicero Liquor Commission issued Serenata a citation for having no manager on duty, and this incident resulted in a seven-day suspension of Serenata's liquor license and a $500.00 fine. (*Id*. ¶ 30; Pls.' LR 56.1(b)(3)(C) ¶ 39.) And, in December 2008, Meza was unable to renew Serenata's liquor license because Cicero had entered default judgment on various Administrative Ordinance citations, even though Meza believed that Cicero previously agreed that these citations would be dismissed. (Pls.' LR 56.1(b)(3)(C) ¶ 40.)

All told, Defendants targeted Plaintiffs dozens of times with sting operations, various citations for ordinance violations, liquor licenses suspensions, and orders to close between July 2006 and February 2009. The liquor license suspensions and orders to close were often overturned, and Plaintiffs continued to claim the Defendants had no legitimate reason to target

Serenata. Given the numerous incidents between Defendants and Serenata, a reasonable person in Plaintiffs' position would have been on notice that she had a "class of one" equal protection claim for "an orchestrated campaign of official harassment directed against [them] out of sheer malice" prior to February 11, 2009. *Esmail*, 53 F.3d at 179. Thus, Plaintiffs' class of one equal protection claim, based on Defendants' actions prior to February 11, 2009, is barred by the two-year statute of limitations. *See Garrison*, 165 F.3d at 569.

### B. Claim for Selective Enforcement Based on Exercise of First Amendment

In alleging an equal protection violation, Plaintiffs also assert a selective enforcement, or selective prosecution, claim against Defendants. A selective prosecution claim is actionable "where the decision to prosecute is made [] in retaliation for the exercise of a constitutional right, such as the right to free speech[.]" *Esmail*, 53 F.3d at 179. "It is appropriate to judge selective prosecution claims according to ordinary equal protection standards." *Wayte v. U.S.*, 470 U.S. 598, 608 (1985). For reasons similar to Plaintiffs' "class of one" equal protection claim, the Court concludes that Plaintiffs knew or should have known of their selective prosecution equal protection claim prior to February 11, 2009.

In their April 2007 counterclaim, Plaintiffs asserted equal protection claims, alleging that, "Town President Larry Dominick and the Town of Cicero have engaged in a campaign of retaliation against business, employees, and residents for speaking out publicly about the political corruption by this administration." (Verified Counterclaim ¶¶ 5, 8, Ex. 3 to Pls.' LR 56.1(b)(3)(C).) Plaintiffs also alleged in their counterclaim that "Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to it pursuant to the First Amendment to the United States Constitution." (*Id.* ¶ 24.) The counterclaim indicates that Plaintiffs were aware of their selective prosecution claim based on the First Amendment at the

time of Defendants' acts. Furthermore, the dozens of actions undertaken by Defendants after Meza stopped supporting Dominick in July 2006 would put a reasonable person on notice of the retaliation claim. Thus, Plaintiffs' selective enforcement equal protection claim, based on Defendants' actions prior to February 11, 2009, is barred by the two-year statute of limitations. *See Garrison*, 165 F.3d at 569.

### C. Claim for Race Discrimination

As a final component to their equal protection claim, Plaintiffs allege that Defendants discriminated against Meza and issued citations to Serenata because of Meza's race. To show a violation of equal protection based on race, "plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). For reasons similar to Plaintiffs' "class of one" and selective prosecution equal protection claims, the Court concludes that Plaintiffs knew or should have known of their race-based equal protection claim due to the actions that took place prior to February 11, 2009.

Again, in their April 2007 counterclaim, Plaintiffs asserted equal protection violations and alleged, "Town President Larry Dominick and the Town of Cicero have engaged in a pattern and practice of discriminating against Hispanics and minority employees and residents of the Town." (Verified Counterclaim ¶¶ 5, 6, Ex. 3 to Pls.' LR 56.1(b)(3)(C).) Plaintiffs also alleged that "Town President Larry Dominick and other high-ranking Town of Cicero officials have referred to Hispanics in Precinct Captain Meetings and elsewhere as 'Wetbacks' and other racially derogatory and offensive terms." (*Id.* ¶ 7.) The counterclaim demonstrates that Plaintiffs were aware of Defendants' alleged practice of racial discrimination and their corresponding equal protection claim prior to February 2009. The dozens of actions undertaken

by Defendants against Plaintiffs combined with Plaintiffs' belief that Defendants had discriminated against Hispanics would also put a reasonable person on notice of the race-based equal protection claim. Thus, Plaintiffs' racial discrimination equal protection claim, based on Defendants' actions prior to February 11, 2009, is barred by the two-year statute of limitations. *See Garrison*, 165 F.3d at 569.

### D. Plaintiffs' Arguments

In response, Plaintiffs contend that: (1) their claims are not barred by the statute of limitations because the continuing violation doctrine applies to the extent that their claims are based on pre-February 2009 conduct; (2) they are not required to amend their complaint after every actionable incident; and (3) Defendants are barred from contesting the applicability of the continuing violation doctrine by the mend the hold and waiver doctrines. (Pls.' Resp. Defs.' Mot. Summ. J. 4-9.) These arguments are unavailing.

First, Plaintiffs contend that the pre-February 2009 events still can be considered under the continuing violation doctrine. The Seventh Circuit noted that the continuing violation doctrine is "misnamed" because rather than allow a plaintiff to sue for an ongoing violation, the doctrine instead allows a "suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. . . . It is thus a doctrine not about a continuing, but about a cumulative, violation." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) (internal citation omitted). Continuing violations are typically found in workplace harassment cases in which "[t]he first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable." *Id.*

Plaintiffs do not demonstrate a continuing or cumulative violation. Defendants' alleged conduct did not suddenly blossom into an actionable equal protection claim after February 11, 2009. Instead, Plaintiffs were aware of their claim when they filed a counterclaim against Defendants on April 13, 2007, alleging equal protection violations based on numerous incidents from July 2006 through April 2007. Plaintiffs cannot now contend that all of Defendants' actions prior to February 11, 2009, were too trivial to form the basis of an equal protection claim. While Meza may have closed Serenata within the two-year statute of limitations period, Plaintiffs still cannot establish a continuing violation. *See Chardon*, 454 U.S. at 8 (noting that in determining when the statute of limitations begins to run in a § 1983 action, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act became painful"). Furthermore, the continuing violation doctrine applies "only if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that she had a claim[.]" *Garrison*, 165 F.3d at 569. As explained in great detail above, Plaintiffs knew or should have known that they had an equal protection claim based upon the events that took place prior to February 11, 2009, and thus the continuing violation doctrine does not apply.

Plaintiffs cite several cases in an attempt to argue that the continuing violation does indeed apply. These cases are distinguishable. In *Wolf v. City of Chicago Heights*, the defendants allegedly conspired to demolish a piece of property in order to discriminate against minorities, and the district court denied defendants' motion to dismiss plaintiff's discrimination claim on statute of limitations grounds. 828 F. Supp. 520 (N.D. Ill. 1993). The court held that the plaintiff could not have reasonably known about the defendants' alleged discrimination because "[d]efendants never stated publicly that they were trying to exclude African-Americans and Mexicans" and the plan was allegedly "devised and executed secretly." *Id.* at 523-24.

Unlike the plaintiff in *Wolf* who did not know about defendants' covert conspiracy, Plaintiffs knew or should have known of Defendants' equal protection violations as evidenced by Plaintiffs' counterclaim and the constant targeting of Serenata by Defendants. In *Heard v. Sheahan*, the Seventh Circuit allowed a plaintiff's cruel and unusual punishment claim for denial of medical care to proceed under the continuing violation doctrine and noted it "would have been impractical to allocate the plaintiff's pain day by day[.]" 253 F.3d 316, 320 (7th Cir. 2001). *Heard* is distinguishable because Plaintiffs were aware of their equal protection claim prior to February 9, 2011, and a court could have calculated Plaintiffs' damages based on fines, fees, and lost profits. *See also Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (declining to apply the continuing violation doctrine because plaintiff was aware of the violation of his rights at the time of the injury and distinguishing plaintiff's injury from *Heard* which "involved the failure to provide needed medical treatment to a state prisoner").

Plaintiffs also cite several cases, including *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), and *Union Pac. R.R. Co. v. Vill. of S. Barrington*, No. 96 C 1698, 1998 WL 102517 (N.D. Ill. Feb. 23, 1998), in arguing "the entire course of Defendants' conduct is necessary to prove the 'orchestrated campaign'" of harassment. (Pls.' Resp. Defs.' Mot. Summ. J. 10, 12.) "[A]n orchestrated campaign of official harassment directed against [plaintiffs] out of sheer malice" may form the basis of an equal protection claim. *Esmail*, 53 F.3d at 179. The cases cited[5] by Plaintiffs, however, address the admissibility of evidence, not whether Plaintiffs' equal protection claim is barred by the statute of limitations. While acts outside the statute of limitations period may be *admissible* as evidence under certain circumstances, determining when a § 1983 *claim* accrues is a separate issue, and the statute of limitations "begins to run when a

---

[5]     *See* Pls.' Resp. Defs.' Mot. Summ. J. 12 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012); *Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988); and *Woodruff v. Wilson*, 484 F. Supp. 2d 876 (S.D. Ind. 2007)).

reasonable plaintiff knew or should have known of facts that would support a charge of discrimination." *Kuemmerlein*, 894 F.2d at 261. Plaintiffs conflate these two concepts, and Plaintiffs fail to demonstrate a continuing violation.

Plaintiffs also cite *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 482-83 (7th Cir. 1996), for the proposition that "Plaintiffs are not required to amend their complaint every time a new incident occurs after the filing of the original complaint." (Pls.' Resp. Defs.' Mot. Summ. J. 7.) But *McKenzie* involved a claim of discrimination and retaliatory action in the employment context. There, the plaintiff had filed a charge of discrimination before the Equal Employment Opportunity Commission ("EEOC") without alleging retaliation. *McKenzie*, 92 F.3d at 481. The court noted a "Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint" and allowed the claim for retaliation that "arose after the charge of discrimination had been filed" to proceed. *Id.* at 481-82 (internal quotation omitted). In that situation, the court found that "only a single filing was necessary to comply with the intent of Title VII[.]" *Id.* at 482 (internal quotation omitted). Such facts are readily distinguishable from the circumstances here.

Finally, Plaintiffs claim that Defendants are barred by the mend the hold and waiver doctrines from arguing that Plaintiffs' claims do not constitute a continuing wrong. These arguments do not warrant much discussion. The mend the hold doctrine forbids a defendant in a breach of contract suit from changing defenses and is inapplicable to Plaintiffs' § 1983 and tort causes of action. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012) (internal citations omitted). As to waiver, Plaintiffs argue that "Defendants cannot now make the argument that the allegations are time-barred when they have previously agreed to have the same

allegations from the original counterclaim re-filed in federal court and consolidated with this case." (Pls.' Resp. Defs.' Mot. Summ. J. 8-9.) This argument is overstated.

When Plaintiffs voluntarily dismissed their April 2007 counterclaim on August 11, 2011, Defendants never agreed to waive a statute of limitations defense in *La Playita I*. (Order, Ex. 9 to *id*.) Furthermore, Defendants only agreed to waive *res judicata* and claim splitting defenses as to the *new* action. (*Id*. ¶ 4.) The new action formed *La Playita II*, the case currently before Judge Dow, not *La Playita I*. Thus, Plaintiffs' waiver arguments do not apply to *La Playita I*.

## II.    § 1983 – First Amendment Claim

Turning to Plaintiffs' §1983 claim predicated upon the First Amendment, Plaintiffs allege that Defendants targeted Serenata for citations of ordinance violations in retaliation for Meza's support for and association with Dominick's political rival. In order to establish a First Amendment retaliation claim, Plaintiffs must show that their constitutionally protected speech was a substantial or motivating factor in Defendants' retaliatory action. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). For reasons similar to Plaintiffs' equal protection claims, Plaintiffs knew or should have known of their First Amendment retaliation claim prior to February 11, 2009.

Referring again to their April 2007 counterclaim, Plaintiffs asserted a First Amendment retaliation claim and alleged, "Town President Larry Dominick and the Town of Cicero have engaged in a campaign of retaliation against business, employees, and residents for speaking out publicly about the political corruption by this administration." (Verified Counterclaim ¶ 8, Ex. 3 to Pls.' LR 56.1(b)(3)(C).) Plaintiffs also alleged that "[b]y Defendant's actions, Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to it pursuant to the First Amendment to the United States Constitution." (*Id*. ¶ 24.) These allegations along

with the numerous other actions that were taken by Defendants after Meza had stopped supporting Dominick in July 2006 would have put a reasonable person on notice that Defendants were retaliating against Plaintiffs for the exercise of Meza's right to free speech. Thus, Plaintiffs' First Amendment claim, based on Defendants' actions prior to February 11, 2009, is barred by the two-year statute of limitations. *Garrison*, 165 F.3d at 569.

**III.    § 1983 – Due Process Claim**

Plaintiffs also assert a §1983 claim alleging violations of their due process rights. Specifically, Plaintiffs contend that Defendants: (1) seized Plaintiffs' liquor license without due process; (2) prohibited Plaintiffs from presenting witnesses at an April 12, 2007, hearing in an effort to close Serenata; and (3) improperly presented hearsay evidence at an August 29, 2007, hearing in an effort to close Serenata. In short, Plaintiffs argue that Defendants deprived them of procedural due process protections when seizing their liquor license and issuing the various orders of closure. *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests"). In making such a claim, Plaintiffs must demonstrate "a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010).

The three events that form the basis of Plaintiffs' procedural due process claim all occurred prior to February 11, 2009: (1) Plaintiffs' liquor license was revoked September 10, 2007; (2) the first hearing at issue took place on April 12, 2007; and (3) the second hearing at issue occurred on August 29, 2007. Because Plaintiffs do not point to any events that occurred after February 11, 2009, that gave rise to their due process claim, Plaintiffs' due process claim is barred by the two-year statute of limitations.

Seeking to circumvent a ruling on the merits, Plaintiffs attempt to voluntarily dismiss their due process claim in a footnote in their opposition to Defendants' motion for summary judgment stating, "Plaintiffs due process claim is subsumed in Plaintiffs' Equal Protection and First Amendment claims. For this reason, Plaintiffs voluntarily dismiss Count III (Due Process)." (Pls.' Resp. Defs.' Mot. Summ. J. 1 n.1.) The Court rejects Plaintiffs attempt to voluntarily dismiss Count III.[6]

## IV. Malicious Prosecution Claim

Plaintiffs also bring a state law malicious prosecution claim against Defendants, alleging that Defendants falsely accused Meza of battery. A malicious prosecution claim requires the plaintiff to show that: (1) "the defendant brought the underlying suit maliciously and without probable cause"; (2) the action was terminated in plaintiff's favor; and (3) special injury. *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997). Meza was found not guilty of one count of battery on September 14, 2010 (Pls.' LR 56.1(b)(3)(C) ¶ 59.), and Plaintiffs filed suit less than a year later, on February 11, 2011. Plaintiffs' malicious prosecution claim is therefore timely and not barred by the one-year statute of limitations. Assuming, however, that the Court would grant their motion for summary judgment as to the federal claims, Defendants ask the Court to decline to exercise supplemental jurisdiction over

---

[6]      Because Defendants have already filed a motion for summary judgment, absent consent, Plaintiffs may dismiss this claim "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The dismissal of a plaintiff's action "under Rule 41(a)(2) is within the sound discretion of the district court[.]" *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988). Plaintiffs' request, which spans a mere twenty-four words in the form of a footnote, is hardly enlightening. Given the fact that the complaint was filed over two years ago, summary judgment has been filed by the Defendants, and Plaintiffs' insufficient explanation, the Court denies Plaintiffs' request to voluntarily dismiss their due process claim. *See Pace v. S. Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969) (explaining factors justifying denial of plaintiff's request to dismiss without prejudice including "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant").

Plaintiffs' state law claims. Because Plaintiffs' federal equal protection and First Amendment claims will survive to the extent they arise out of events that took place on or after February 11, 2009, the Court shall maintain supplemental jurisdiction over Plaintiffs' malicious prosecution claim.

### V.    Abuse of Process Claim

Additionally, Plaintiffs assert an abuse-of-process claim, alleging that Defendants improperly used provisions of the Liquor Control Act to shut down Serenata. An abuse of process claim requires a plaintiff to allege: "(1) the existence of an ulterior purpose or motive; and (2) some act in the use of the legal process not proper in the regular prosecution of the proceedings." *Ewert v. Wieboldt Stores, Inc*., 347 N.E.2d 242, 243 (Ill. App. Ct. 1976).

As a basis for their abuse of process claim, Plaintiffs allege that Defendants improperly issued citations and prosecuted actions before various governmental bodies in an effort to force Plaintiffs to close Serenata. The statute of limitations in an abuse of process action "commences to run from the date that the last act giving rise to the cause of action has accrued." *Withall v. Capital Fed. Sav. of Am.*, 508 N.E.2d 363, 367. Here, Defendants' issuance of a citation or commencement of prosecution is the last act giving rise to Plaintiffs' abuse of process claim. *See id*. at 365, 368 (holding plaintiff's abuse of process cause of action accrued, at the latest, when defendant filed its amended complaint, not when defendants non-suited plaintiff from the lawsuit).

Defendants contend that the issuance of citations and prosecutions cannot support an abuse of process claim as a matter of law. (Defs.' Mot. Summ. J. 12.) Even assuming that the citations and prosecutions *could* support an abuse of process claim, Plaintiffs do not allege any issuance of citations or prosecutions by the Defendants after February 11, 2010. In their

statement of facts, Plaintiffs assert that Defendants last issued Serenata a citation on October 3, 2009, and Defendants last issued a notice of hearing seeking the revocation of Serenata's liquor license on October 13, 2009. (Pls.' LR 56.1(b)(3)(C) ¶¶ 55-56.) Because Plaintiffs do not point to any events that occurred on February 11, 2010, or later that form the basis of their abuse of process claim, Plaintiffs' abuse of process claim is barred by the one-year statute of limitations.

In response, Plaintiffs cite *Allen v. City of Chicago* for the proposition that the statute of limitations for an abuse of process claim does not begin to run until the underlying legal proceedings are terminated. No. 08-cv-6127, 2009 WL 4506317 (N.D. Ill. Nov. 30, 2009). The plaintiff in *Allen* filed suit for abuse of process two years after his arrest and about seventeen months after the criminal proceedings were terminated in his favor. *Id*. at * 7. Thus, in *Allen*, the plaintiff's abuse of process claim was barred by the one-year statute of limitations by any measure, and the court did not hold that the statute of limitations begins to run when the criminal proceedings are terminated. Assuming Plaintiffs can even establish an abuse of process claim based on Defendants' citations or prosecutions, the statute of limitations for Plaintiff's claim began to run when Defendants issued a citation or commenced prosecution against Plaintiffs, and Plaintiffs' abuse of process claim is therefore barred by the one-year statute of limitations. *See Withall*, 508 N.E.2d at 365, 368.

## VI. Intentional Infliction of Emotional Distress Claim

Finally, Plaintiffs allege that Defendants' targeting of Serenata for citations based upon alleged ordinance violations and criminal battery charges constitutes an actionable claim for intentional infliction of emotional distress ("IIED"). An IIED claim requires plaintiff to demonstrate that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant knew that severe emotional distress was

certain or substantially certain to result from its conduct. *Miller v. Equitable Life Assurance Soc'y of U.S.*, 537 N.E.2d 887, 888 (Ill. App. Ct. 1989).

In Illinois, "a cause of action 'accrues' when facts exist that authorize the bringing of a cause of action." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012). Plaintiffs allege they suffered severe emotional distress as a result of Defendants' extreme and outrageous conduct, which consisted of improperly targeting Plaintiffs for: (1) various citations and administrative proceedings; and (2) criminal battery charges. The last time Defendants targeted Serenata for citations or an administrative proceeding, however, was October 13, 2009, when Defendants issued a notice of hearing seeking revocation of Serenata's liquor license. (Pls.' LR 56.1(b)(3)(C) ¶ 56.) Thus, Plaintiffs' IIED claim based on Defendants' targeting Serenata for citations and administrative proceedings, at the latest, accrued on October 13, 2009, and it is barred by the one-year statute of limitations.

To support their IIED claim, Plaintiffs also allege that Meza was falsely accused of criminal battery and was found not guilty on September 14, 2010. Because Plaintiffs' complaint was filed less than a year after Meza was found not guilty of battery, Plaintiffs' IIED claim based on Defendants' alleged malicious prosecution of Meza is not barred by the one-year statute of limitations. *See e.g.*, *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) (noting "IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated").

Plaintiff's IIED claim based on Defendants' alleged targeting of Serenata for citations and administrative proceedings, however, is barred by the one-year statute of limitations. Plaintiffs argue that Defendants' last act occurred on May 14, 2012, when Defendants dismissed the remaining charges against Plaintiffs and that their entire IIED claim is not barred by the

statute of limitations. (Pls.' Resp. Defs.' Mot. Summ. J. 14.) While a continuing violation theory may be cognizable in an IIED context, a continuing violation is measured "by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Pavlik v. Kornhaber*, 761 N.E.2d 175, 187 (Ill. App. Ct. 2001) (internal citation omitted).[7] As explained above, Defendants' last alleged unlawful act of targeting Serenata occurred on October 13, 2009. In dismissing the remaining charges against Plaintiffs, Defendants did not act unlawfully, act in a way that formed the basis of Plaintiff's IIED claim, nor somehow put Plaintiffs on notice that they had an IIED claim. Defendants' allegedly tortious conduct that formed the basis of Plaintiff's IIED claim, began in 2006 and ceased on October 13, 2009, when Defendants targeted Serenata for the last time.

## Conclusion

For the reasons stated herein, the Court grants in part and denies in part Defendants' motion for summary judgment [259]. Plaintiffs' due process (Count III) and abuse of process (Count V) claims are completely barred by the statute of limitations. Plaintiffs' equal protection (Count I) and First Amendment (Count II) claims based on Defendants' actions prior to February 11, 2009, are also barred by the statute of limitations. Plaintiffs' IIED (Count VI) claim based on Defendants' targeting of Serenata for ordinance violations and other penalties is also barred by the statute of limitations. Plaintiffs' equal protection and First Amendment claims, based on Defendants' actions on or after February 11, 2009, along with Plaintiffs' malicious prosecution claim (Count IV) may proceed. Plaintiff's IIED claim based on Defendants' malicious prosecution may also proceed.

---

[7] *Pavlik* involved allegations of sexual harassment, *id*, a context in which courts have found better suited for continuing violations. *See e.g. Limestone*, 520 F.3d at 801 (noting continuing violations are typically found in workplace harassment cases in which "[t]he first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable").

**SO ORDERED**                    **ENTER:  3/11/14**

_____

**JOHN Z. LEE**
**United States District Judge**