**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LA PLAYITA CICERO, INC., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11 CV 1702 |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF CICERO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| LA PLAYITA CICERO, INC., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 11 CV 5561 |
| v. | ) | |
| | ) | |
| TOWN OF CICERO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' REVISED CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT**

NOW COME the Defendants, the TOWN OF CICERO, LARRY DOMINICK, LARRY

POLK, PAUL DEMBOWSKI, and SERGE ROCHER, by and through their attorney, Cynthia S.

Grandfield of Del Galdo Law Group, LLC and in support of its motion for summary judgment

state:

I.      *Relevant Procedural History*

As this Court is aware, LaPlayita and Meza currently have two complaints pending in the

Northern District of Illinois. *LaPlayita, et al. v. Town of Cicero, et al.*, Case No. 11 CV 1702 was filed in

February of 2011. *LaPlayita, et al. v. Town of Cicero,* Case No. 11 CV 5561 was re-filed in the

Northern District of Illinois in August of 2011; it had previously been filed in the Circuit Court of

Cook County as a counterclaim in April of 2007.   Case No. 11 CV 1702 has the Town as well as

individual defendants listed and alleges events from 2006 to 2009 with the following counts: (I) §1983 Equal Protection Violations, (II) §1983 First Amendment Retaliation, (III) §1983 Due Process violation, (IV) Illinois Malicious Prosecution, (V) Illinois Abuse of Process, (VI) Illinois Intentional Infliction of Emotional Distress. Case No. 11 CV 5561 only has the Town as a defendant, was filed in August of 2011, alleges events from 2006 to 2009, and contains the following counts: (I) § 1983 Equal Protection Violation, (II) §1983 First Amendment Retaliation.

In March of 2014, the Court in 11 CV 1702 granted in part and denied in part and denied in part Defendants' motion for summary judgment with respect to the statute of limitations. The Court granted summary judgment with respect to Counts III (§1983 Due Process Claim) and V (Illinois Abuse of Process Claim) and held that any incidents that occurred prior to February of 2009 were not actionable in Counts I and II and that only malicious prosecution related to Meza's arrest in October of 2009 could proceed with respect to Counts IV and VI. See SMF 1.[1]

II.     *Relevant Citations and Complaints at Serenata Restaurant and Bar*

Plaintiff Meza owned LaPlayita Cicero, Inc., which operated as "Serenata Restaurant and Bar" from 2005 to 2009. Serenata was a bar that had constant problems. On May 18th, Cicero Police Officers arrested five individuals as they were existing Serenata, two for driving under the influence, one for possession of cannabis and drug paraphernalia, and two for disobeying a police officer and using offensive gestures. SMF 12. On May 26th, 2006, Cicero Police Officers were dispatched to Serenata due to reports of a fight; two groups of gang members were yelling at one another inside; Serenata security had asked the groups to leave and upon exiting, the gang members were throwing bottles at one another and causing property damage to a neighboring business. SMF 13. On May 28th, 2006 Cicero Police Officers were in the vicinity and observed someone being hit and were informed that the fight occurred inside. SMF 14. Also, on May 28th, 2006, Cicero Police Officers

---

[1] SMF=Statement of Material Facts.

proceeded to Serenata following reports of a large group of individuals standing in front of Serenata and being disorderly. SMF 15. Citations resulted for all of these incidents. Meza entered into a global settlement agreement with respect all four of these for an agreed fine of $1,400 dollars and to close the business for 10 days. SMF 17. As part of the settlement agreement, Meza agreed to waive any and all claims against the Town and any officials or employees related to the citations, and explicitly admitted that the incidents occurred and that they were in violation of the liquor code. SMF 17.

On December 31st, 2006, upon entry Deputy Liquor Commissioner determined that Meza was using the second floor of Serenata as a bar as well, which had been completely refurbished, and for which neither Meza nor Serenata had an occupancy permit. SMF 18. An inspection further revealed multiple fire code violations, including exit doors that opened inwards as opposed to outwards similar to what cause the E-2 nightclub disaster in the City, an exit that led to the roof of the two story building, improperly marked exit signs, and coat racks blocking doors at the front of the building on the first floor. SMF 18. All of these conditions existed on New Years Eve with a crowded restaurant, including a DJ and smoke machine on the 2nd floor. SMF 18. The Deputy Liquor Commissioner deemed the situation an emergency and closed down the restaurant. SMF 18. He evacuated the restaurant with the assistance of the Cicero Police Department. SMF 18. On January 5th, 2007, the Town Liquor Hearing Officer, Tony Calabrese, granted the Town's petition to prevent Meza from serving alcohol for 7-days based on the Code violations that existed in the restaurant. SMF 19. On January 5th, 2007, the Town filed a complaint and TRO in the Circuit Court of Cook County requesting Serenata remain closed until the Town could determine the condition of the second floor and how it affected the rest of the structure. SMF 20. The TRO was verified by the then Deputy Building Commissioner, Ed Ziemba. The Town obtained a TRO in the Circuit Court of Cook County on January 5th, 2007. SMF 20. Town President Dominick was not

present or involved with respect to any of these events.   On January 10th, 2007, the TRO was dissolved with respect to the first floor after Serenata agreed to keep the 2nd floor closed and structural engineers had inspected the property.  SMF 21.

On February 2nd, 2007, the Town served a notice of hearing and an immediate closure of premises (with respect to the serving of alcohol) on Serenata in relation to incidents that occurred in November of 2006 and January of 2007.  The motion for a hearing was signed by the Town Attorney and the Order closing the premises with respect to the serving of alcohol from February 5th, 2007 to 12th 2007 was signed by the Deputy Liquor Commissioner, Paul Dembowski.  SMF 22-23.  On February 8th, 2007, the hearing pursuant to 235 ILCS 5/7-5 for a 7-day closure was held before Town Liquor Hearing Officer Patrick Murray.  SMF 24.  Serenata and Serenata's counsel failed to appear.  Thus, the 7-day closure remained in effect.  The Town President was not present or involved with respect to any of these events.  SMF 24.

In April of 2007, Serenata was again cited for a violation of serving a minor related to a March of 2007 incident.  SMF 26.  Again, Deputy Liquor Commissioner Paul Dembowski ordered the premises closed (with respect to the sale of alcohol) for seven days from April 9th to April 13th, 2007.  On April 12th, 2007, a hearing was conducted pursuant to the provisions of 235 ILCS 5/7-5.  SMF 28.  The hearing was presided over by the Town Liquor Hearing Officer, Richard Pellegrino.  The Town President was not present or involved with respect to any of these events.  SMF 27.

On September 10th of 2007, subsequent to a consolidated hearing before the appointed hearing officer for the Town Liquor Control Commissioner, Richard Pellegrino, on the three charges related to the citations received by Serenata on September 28th, 2006, December 31st, 2006, and January 1st, 2007, the hearing officer made several findings of fact and law.  The hearing officer sustained the September 28th, 2006, December 31st, 2006, and January 1st, 2007 citations and revoked Serenata's liquor license.  The hearing officer did not sustain the March 1st, 2007 citation.  SMF 29.

On January 7th, 2008, pursuant to Serenata's appeal, the Illinois Liquor Control Commission modified the revocation to a ten day suspension.  SMF 30.

On January 31st, 2008, Serenata sold alcohol to a minor as part of a Cicero liquor sting operation. There was also no manager on duty.  A citation was issued.  Pursuant to the January 31st, 2008 citation, Serenata was not permitted to sell alcohol from February 1st to February 8th of 2008 under the authority of 235 ILCS 5/7-5.  SMF 32.  On April 21st of 2008, the hearing officer for the Town Liquor Control Commission issued a ruling sustaining both counts with the penalty of a $2,000 fine and Serenata not being allowed to serve liquor for 30 days.  This was later upheld by the Illinois Liquor Control Commission.  SMF 34.  On May 23rd, 2008, Serenata again sold to a minor as part of a liquor sting operation.  Citations were again issued.  After a 3-day hearing on the merits before the Town Liquor Commission's hearing  officer, Serenata was issued a 30-day suspension of its liquor license to commence on July 31st, 2008 and a $2,000 fine.  SMF 33.

On October 28th, 2008, subsequent to another hearing before the Town Liquor Commission Control hearing officer a 7-day suspension commencing on January 13th, 2009 and a $500 fine was issued.  SMF 35.

In April of 2009, Cicero Police Officers went to Serenata to perform a "bar check" because they had received a report from an unknown individual that there was underage drinking occurring.  Cicero Police Officers checked IDs, found no violations, and left without incident.  The Town President was not present or involved with respect to the April of 2009 "bar check."  SMF 37.

On July 24th, 2009, Serenata was cited for not having a business license.  A settlement agreement was entered into by all parties, including Serenata, Meza and the Town that Meza admitted the charges and agreed to pay a $500 fine and serve a five day suspension.  Meza was given time to consult with counsel.  Within the settlement, Meza also agreed to waive any and all claims of suit related to the incident.  SMF 38.

In October of 2009, criminal misdemeanor complaints for battery were signed against Meza by Rocher and Dembowski. Town President Dominick had no involvement in Meza's prosecution. SMF 39.

III.    *11 CV 1702*

   A. *Individual Defendant Liability*

To hold an individual defendant liable, a plaintiff must allege that the defendant was personally involved in the deprivation of a constitutional right. Gossmeyer v. McDonald, 128 F.3d 481, 484 (7th Cir. 1997); see Black v. Lane, 22 F.3d 1395, 1401 (7th Cir. 1994). The personal involvement requirement may also be satisfied if the conduct causing the deprivation occurs at the defendant's direction or with his knowledge and consent. Gossmeyer, 128 F.3d at 494; see Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996)(stating that defendant must cause or participate in alleged constitutional deprivation).

   1. *Town President Dominick*

Plaintiffs have failed to produce or adduce any evidence that Dominick had anything to do with the bar check that occurred in April of 2009 or Meza being arrested for battery of Rocher and Dembowski in October of 2009. Any liability related to the July of 2009 incident was waived by Meza and LaPlayita pursuant to a settlement agreement. Thus, none of the remaining actionable incidents serve as a basis to hold Dominick liable, and he must be dismissed as a defendant as a matter of law.

   2. *Police Lieutenant Larry Polk, Paul Dembowski and Serge Rocher*

The only remaining actionable incident that Polk had any involvement in was the October of 2009 arrest for battery. However, pursuant to Reichle v. Howards 132 S.Ct. 2088, 2094 (2013), Polk is entitled to qualified immunity for any "retaliatory arrest" of Meza. Thus, Polk should be dismissed as a defendant as a matter of law.

Further, the only incident that Dembowski, and Rocher had any involvement in was the October of 2009 arrest for battery of Meza. Thus, if the Court determines that the incident is not actionable for the reasons stated in Section III.B 1-3 and VII. C. of this brief, Dembowski, Polk, and Rocher must be dismissed as a defendant as a matter of law for personal involvement.

### B. *Malicious Prosecution and IIED*

In Illinois, the elements of malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. Swick v. Liataud, 169 Ill.2d 504, 512, 662 N.E.2d 138, 142. In Count IV, Plaintiffs contend that Meza's criminal prosecution for battery in October of 2009 is malicious prosecution. Plaintiffs claims fail, however, because they cannot establish the absence of probable cause and the termination of proceedings in favor of Meza.

### 1. *Probable Cause Existed*

Probable cause has been defined as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000). "Contrary to what its name might suggest, probable cause demands even less than probability." Woods at 996. "[I]t requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Id. Probable cause can be established by the accusation of one credible eyewitness. Anderer v. Jones, 385 F.3d 1043, 1049-1050 (7th Cir. 2004); Woods v. City of Chicago, 234 F.3d 979, 987 (7th Cir. 2000); Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir. 1991); Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 (7th Cir. 1986)(holding that report of third party eyewitness was sufficient to authorize an arrest and support probable cause).

Probable cause existed in this case. The initial arrest was made by Lieutenant Polk after he was advised by Rocher and Dembowski that Meza had struck them. Further, Lieutenant Polk observed Meza angrily run out of his restaurant and head towards the vehicle that Rocher and Dembowski were located in and heard a loud disturbance by the vehicle. SMF 39.

The arrest report contains not one, but three supplemental reports of third party, eyewitness statements of Ashley Kennedy, Liza Irazoque, and Victoria Smith all detailing the battery incident. SMF 39. Additionally, Kennedy, Irazoque, and Smith all testified consistent with their witness statements of October in Meza's criminal trial in May of 2010. SMF 40.

Specifically, Kennedy testified that Meza came out and started banging on the window of the car and on the car. When Defendant Dembowski opened the door, Meza punched Dembowski in the arm and lunged into the car while grabbing at his shirt. It appeared to Kennedy as if Meza was trying to get to the girls in the back seat but Dembowski used his arms and "stood him back out" of the car. Smith also testified that Meza started banging on the car and window, punched Dembowski in the shoulder and stated "I want to see those bit**es IDs." Irazoque also testified to Meza pounding on Dembowski's window and pounding on the window by where she was sitting, that Meza was acting aggressively when he came to the windows, was yelling and hitting Dembowski on the shoulder with his fist, and that Meza tried to enter the vehicle while screaming that he wanted their IDs. SMF 40.

### 2. *Charges Dismissed in a Manner Not Indicative of Guilt or Innocence*

With respect to the termination of a proceeding, it must be in favor of the plaintiff in a manner "indicative of the innocence of the accused." Joiner v. Benton Cmty. Bank, 82 Ill.2d 40, 411 N.E.2d 229, 232 (1980). To determine if a termination is favorable, the court examines the circumstances, not the forum or title of the disposition. Cult Awareness Network v. Church of Scientology, Intl., 177 Ill.2d 267, 272-273, 685 N.E.2d 1347, 1352-1353 (1997).

In this case, Meza was charged with battery to Rocher and Dembowski in October of 2009. After a two-day bench trial commencing in May of 2010 and concluding in September of 2010, Cook County Judge Vasquez found Meza guilty of battery, fined Meza and sentenced him to supervision. SMF 41.

In October of 2010, Meza's criminal attorney made a motion for a new trial before Judge Vasquez on the grounds that it was inconsistent to find Meza not guilty of battery to Rocher, but guilty of battery of Dembowski. SMF 41. Judge Vasquez ruled on the record that he did not believe that Meza's motion justified a new trial. Judge Vasquez, however, further determined that the State's Attorney had filed to disclose discovery evidence of Dembowski's physical injury in support of battery, as the battery alleged against Dembowski was specifically physical injury as opposed to "physical contact of an insulting or provoking nature." Judge Vasquez stated on the record that he believed that Meza had behaved "childishly;" that he believed he was guilty of disorderly conduct; and that he believed that he was guilty of battery. But Judge Vasquez stated that he had relied on the medical evidence in finding Meza guilty of battery, and he decided to find him not guilty of battery of Rocher but guilty of battery of Dembowski as a way of "splitting the baby" because he was concerned about the discovery violation by the State in failing to disclose Dembowski's medical treatment. SMF 41. Thus, Judge Vasquez granted Meza's motion for a new trial based on a discovery violation by the State. This is not a termination of the criminal proceeding in favor of Meza in a manner indicative of guilt or innocence; it is a termination of a proceeding based on a discovery violation by the State, where the judge essentially said that if not for the discovery violation he would have found him guilty.

### 3. No Malice has Been Demonstrated

Malice is shown by demonstrating that the prosecution was pursued for the purpose of

injuring plaintiff or some other improper motive. Turner v. City of Chicago, 91 Ill. App.3d 931, 937, 415 N.E.2d 481, 487 (1980). Here Plaintiffs have failed to produce any evidence that Defendants Dembowski, Rocher, or Polk instituted criminal charges against Meza for the purpose of injuring him or any other improper motive.

4. *IIED*

To make out a claim for intentional infliction of emotional distress, a plaintiff must allege "extreme and outrageous behavior" that "shocks the conscience." See Feltmeier v. Feltmeier, 207 Ill.2d 263, 268-69, 798 N.E.2d 75, 80 (2003). As discussed in the preceding section, Plaintiffs fail to make out a claim for malicious prosecution related to his October of 2009 arrest. Pursuant to the Court's March of 2014 Opinion, Meza's arrest for battery in October of 2009 is the only remaining incident within the statute of limitations that he can claim intentional infliction of emotional distress. Thus, a claim of emotional distress based on the malicious prosecution also cannot lie as a matter of law as Meza cannot allege any extreme and outrageous conduct without it.

Further, Meza has not produced any evidence sufficient to prove that he suffered emotional distress severe enough to be actionable for his prosecution for battery related to the October of 2009 incident. Merely characterizing emotional distress as severe is not sufficient. Welsh v. Commonwealth Edison Co. 306 Ill. App.3d 148, 156, 713 N.E.2d 679, 685 (1st Dist. 1999). The level of emotional distress separates the actionable from the non-actionable Id. at 155, 684. The standard is so stringent that he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. McGrath v. Fahey, 126 Ill.2d 78, 86, 533 N.E.2d 806, 809-810; Grey v. First National Bank of Chicago 169 Ill. App.3d 936, 943 (1988).

In the Welsh case, the plaintiffs similarly described the emotional distress suffered as in this case. Specifically, the Welsh plaintiffs alleged that they suffered "anxiety, humiliation" and "extreme and severe emotional distress." But, like here, the Welsh plaintiffs did not allege any facts from

which severe emotional distress could be inferred such as that Meza was hospitalized, required to seek medical care, or that they were afflicted with a physical or mental condition that made them particularly vulnerable to emotional distress. SMF 43. Instead, Meza complained generally of "depression" and "anxiety" and only saw a mental health professional to produce an expert report ion relation to this case. Further, the expert, Dr. Marshall, opined that Meza's "depression" and "anxiety" stemmed from the repeated citations that Serenata received and the closure of the premises with respect to alcohol, not related to his prosecution for battery. SMF 44.

### C. No Punitive Damages Can Be Assessed Against the Town as a Matter of Law

It is black letter law that municipalities are not subject to punitive damages in suits under 42 U.S.C. § 1983. Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); See also Robinson v. City of Harvey, 617 F.3d 915, 916 (7th Cir. 2010). Further, under 745 ILCS 10/2-102 of the Illinois Tort Immunity Act, no punitive damages may be awarded against a municipality. Yet, Plaintiffs seek punitive damages against the Town in their prayers for relief on every Count. See Compl. (G) in prayer for relief of Counts I to III, (B) in prayer for relief of Counts IV to V, and (C) in prayer for relief of Counts VI.

### IV. April of 2009 Incident Not Actionable

In paragraphs 122-125 of the Complaint in Case No. 11 CV 1702 and 63-66 of the Complaint in Case No. 11 CV 5561, Plaintiffs refer to an incident that occurred in April of 2009 that essentially constituted a "bar check" of Serenata Restaurant and Bar by the Cicero Police Department. There is no evidence that Plaintiffs suffered any injury or damages. By Plaintiffs own allegations in the Complaint, the officers checked after they received a complaint that underage drinking was occurring, determined that there were no underage drinkers and noted that in the report. See Compl. ¶ 122-125; Case No. 11 CV 1702; Supplemental Compl. ¶ 63-66, Case No. 11 CV 5561.

V.    *July 24th, 28th and 29th 2009 Incidents Not Actionable*

On July 24th, 2009, Serenata was cited for not having a business license.  Meza was served with the Notice of the Hearing related to this on July 29th, 2009.  A settlement agreement was entered to by all parties, including Serenata, Meza and the Town that Meza admitted the charges and agreed to pay a $500 fine and serve a five day suspension on July 29th, 2009.  Meza was given time to consult with counsel.  Within the settlement, Meza also agreed to waive any and all claims of suit related to the incident.  SMF 38.  Despite the fact that Plaintiffs entered into a clear settlement agreement waiving any and all claims against the Town and its officers and the Court ruling in March of 2014 that settlement barred the claims, Plaintiffs once again asserted claims related to this incident in its supplemental complaint in Case No. 11 CV 5561 filed in June of this year.  See Suppl. Compl. ¶ 67-72, Case No. 11 CV 1702.  All claims related to this incident have been waived by Plaintiffs.  No Defendants are subject to any liability of Paragraphs 67-72 of Case No. 11 CV 5561 or Paragraphs 126-131 of Case No. 11 CV 1702.

VI.    *Equal Protection Claim*

Plaintiffs cannot make out the primary elements of an equal protection selective prosecution claim: (1) the actions had a discriminatory effect that (2) was motivated by a discriminatory intent. Chavez v. Illinois State Police, 251 F.3d 612, 635-636 (7th Cir. 2001); See also Didzerekis v. Stewart, 41 F. Supp.2d 840, 847-848 (N.D. Ill. 1999)(holding that to establish an equal protection violation based on City police response to domestic violence the plaintiff must show: (1) the City maintained a practice which results in discrimination against women; (2) that discrimination against women motivated the Officers' and the City's actions; and (3) that plaintiffs were significantly injured). Plaintiffs can prove neither intent nor effect.

### A. No Discriminatory Intent

LaPlayita and Meza cannot make out a viable argument of discriminatory intent. Meza has not produced any evidence that each of the decisionmakers involved in issuing citations to LaPlayita in 2007 and 2009 that would establish discriminatory intent. Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 781-782 (7th Cir. 2007)(holding that "stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."); See, e.g., Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003)(holding that to proceed under the direct method via a direct admission by a decision maker "essentially requires an admission by the decision-maker that his actions were based on prohibited animus); Cf. Chavez, 251 F.3d at 646 (7th Cir. 2001)(holding that a Trooper referring to a minority as "you people" during a traffic stop might be used to demonstrate discriminatory intent).

### B. No Discriminatory Effect

A similarly situated individual is one that is the same in all material ways, besides the unlawful discrimination factor. Keri v. Bd. of Trustees of Purdue Univ. 458 F.3d 620, 645 (7th Cir. 2006). The Seventh Circuit defines "similarly situated" as "similarly situated *in all respects*." Spath v. Hayes Wheels Int'l Indiana, Inc., 211 F.3d 392, 397 (7th Cir. 2000)(*quoting* Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (7th Cir. 1992). To determine whether a comparator is similarly situated, the Court "must look at all relevant factors, the number of which depends on the context of the case." Radue v. Kimberly Clark 219 F.3d 612, 617 (7th Cir. 2000). A common sense approach must be taken to a similarly situated inquiry. Swearingen-El v. Cook County Sheriff's Dept., 602 F.3d 852, 861 (7th Cir. 2010)(holding that a white officer suspended for living with a former detainee was not similarly situated with a black officer disciplined for having sex with a current detainee); Humphries v. CBOCS West, Inc., 474 F.3d 387, 404-405 (7th Cir. 2007)(holding common-sense approach should be taken to similarly situated inquiry); Chavez v. Ill. State Police, 251 F.3d 612, 637 (7th Cir. 2001).

In selective prosecution equal protection cases, the Seventh Circuit has made it clear that in order for an individual to be similarly situated, the evidence against the comparator must be as strong or stronger than against the person arguing that there has been an equal protection violation. McDonald v. Village of Winnetka, 371 F.3d 992, 1006 (7th Cir. 2004). When different decisionmakers are involved, they are rarely similarly situated in all relevant aspects. Id. at 1008. In McDonald, a selective prosecution case, not even the fact that the plaintiff produced evidence of other investigations of arson, the same alleged crime, and whether it was the result of "rekindling," the same alleged defense as plaintiff in the case, was enough to make those investigations comparators. McDonald at 1002-1008.

Plaintiffs can point to no similarly situated liquor licensee that engaged in similar liquor code violations but were not cited.

### C. Claim with Respect to February of 2007 Amendment of Town Liquor Ordinance

With respect to the revision of the February of 2007 Ordinance, Meza cannot make out a claim of equal protection because he cannot show that the Ordinance was only changed with respect to Hispanic owned businesses or only enforced with respect to Hispanic owned businesses.

## VII. First Amendment Retaliation

### A. Case No. 11 CV 5561

#### 1. Meza Did Not Engage in Any Protected Speech Prior to Receiving Citations

Plaintiffs must establish a causal link between their protected expression and Defendants' subsequent action by showing that it was a substantial or motivating factor in Defendants' actions. Massey v. Johnson, 457 F.3d 711, 717 (7th Cir. 2006); See also Stone v. City of Indy Pub. Utils Div., 281 F.3d 640, 643-644 (7th Cir. 2002); See also Williams v. Seniff, 342 F.3d 774, 782 (7th Cir. 2003)(holding plaintiff must demonstrate causal link that impermissible reason was a substantial or motivating factor in making adverse employment action decision); McClure v. Cywinski, 686 F.2d

541, 548 (7th Cir. 1982)(holding that statements made by a decision maker only sufficient to create inference that preferred working with employees that were politically motivated and that plaintiff must show a causal relationship between conduct and the claimed deprivation).

Plaintiffs cannot establish that they engaged in any protected speech prior to receiving citations. When Meza was directly asked in his deposition what "corruption" he spoke out against "publicly" the only answer Meza was able to provide was that he spoke out at Town Board meetings. When asked when he did that, Meza stated that it was just prior to the last election. Meza's deposition was taken in 2010. The last election prior to that was 2009. SMF 42. Meza further admitted in his deposition that he had not engaged in any political activity in 2006 or 2007 because "there was no election going on." SMF 42. Meza was a group of people that complained about an amendment to the Town Liquor Ordinance in February of 2007. Lastly, the first time Meza appeared in *El Dia* to give comment was in March of 2007. SMF 43.

Meza may attempt to allege that he was retaliated based on his "refusal to stop advertising in *El Dia*." However, this is based on an alleged conversation Meza had with the Town President in July of 2006. Pursuant to LaPlayita's settlement concerning the May of 2006 incidents Meza admitted that he had violated the liquor code on several occasions in May of 2006. As testified to by Defendant Dembowski, at the time that he was the deputy liquor commissioner, businesses were placed on lists for stings based on previous violations. Thus, Meza and LaPlayita, by virtue of the settlement agreement were "targeted" based on their previous violations – which occurred prior to any protected speech, even if the July of 2006 incident is included.

### 2. *February of 2007 Town Liquor Ordinance Amendment Not Actionable*

With respect to Meza's allegations of the Town Liquor Ordinance being changed to reflect a new closing time for a certain class of liquor licenses, Meza, along with other owners in that class complained and the ordinance was changed within a few days. Meza has not produced any evidence

that he was injured as a result of this brief ordinance change. Thus, the amendment of the Town Liquor Ordinance in February of 2007 is not actionable.

      B.   *Case No. 11 CV 1702*

          1.   *Meza's Association with the Montes De Ocas is Not Subject to First Amendment Protection*

With respect to Meza's association with the Montes De Oca family, the owners of *El Dia*, as alleged in Paragraph 47 of the Complaint, this is not the type of association protected by the First Amendment. In Christensen v. County of Boone, Ill., the Seventh Circuit analyzed what type of association claims were protected by the First Amendment. 483 F.3d 454 (7th Cir. 2007). In Christensen, the plaintiffs were boyfriend and girlfriend. Robert Alty was a police officer with the City of Belvidere, Illinois and his girlfriend, was Anita Christensen. Christensen, at 457. Belvidere Officer Alty cited a friend of Boone County Deputy Krieger's for a DUI and the two subsequently had an altercation. Id. at 457-458. Alty and his girlfriend Christensen filed the suit alleging that Deputy Krieger and Boone County was violating their Fourth Amendment right to be free from unreasonable search and seizure and their right to intimate association by following them around in his Boone County squad car. Id. The Seventh Circuit took several pages of its opinion to determine what right exactly was being violated with respect to intimate association. See generally Christensen, 483 F.3d 454, 461-463 (7th Cir. 2007). After extensive analysis to determine if the claim could be analyzed under the First Amendment, the Court, relying largely on Roberts v. United States Jaycees, 468 U.S. 609 (1984), held that it should not be. Christensen, at 463-464.

Specifically, the Seventh Circuit stated: "Indeed the allegations of the plaintiffs' complaint make clear that the relationship between Ms. Christensen and Officer Alty is not one entered into for the purpose of 'speech, assembly, petition for the redress of grievances, [or] the exercise of religion.' *Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984)." Christensen, 483 F.3d 454, 463-464. The Seventh Circuit further stated: "*Lewis* calls for judicial modesty in implementing a federal program of

16

constitutional torts that lie outside any specific clause of the Constitution." Id. at 464-465. Here, similar to Christensen, Plaintiffs, make a claim of First Amendment retaliation based on Meza's association with the Montes De Oca family, the owners of *El Dia*, to socialize. See Compl. ¶ 47, 155, 156. This claim is not actionable under the First Amendment and summary judgment must be entered as a matter of law with respect to any claim that Meza or LaPlayita were retaliated against for having a social relationship with the Montes De Ocas.

C. *Probable Cause as a Defense to First Amendment Retaliation Cause of Action with Respect to October of 2009 Arrest for Battery - Cases No. 11 CV 1702 and 11 CV 5561.*

In retaliatory prosecution actions, the Supreme Court has held that plaintiffs are additionally required to prove the absence of probable cause. See Hartman v. Moore, 547 U.S. 250, 261 (2006); See also Webb v. Lanton, 2010 WL 2102416 at *5 (N.D. Ill. May 18th, 2010); Thayer v. Chiczewski, 2010 WL 1336537 at *7 (N.D. Ill. March 7th, 2010); Williams v. City of Carl Junction, Missouri, 480 F.3d 871, 876 (8th Cir. 2007); Barnes v. Wright, 449 F.3d 709 (6th Cir. 2006). For all of the reasons contended in Section III. B. 1. of this brief, probable cause existed. Thus, any claim Plaintiff would make with respect to his October of 2009 arrest for battery as First Amendment Retaliation is barred as a matter of law.

VIII. *No Basis for "Widespread Pattern and Practice" Monell Liability for Town in Equal Protection or First Amendment Claims*

The basis for municipal liability under § 1983 is that the municipality sanctioned or ordered, through official policy, the unlawful discriminatory conduct in issue. Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986). A local governing body may be liable for monetary damages under §1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well-settled, or (3) an official with final policy-making authority.

Thomas v. Cook County Sheriff's Dept. 604 F.3d 293, 303 (7th Cir. 2010)(*citing to* Monell and Valentino).

Plaintiffs, as a matter of law, cannot establish a widespread pattern or practice exists. Plaintiff cannot simply point to the series of citations received by Meza's Serenata to establish a practice or custom. See Phelan v. Cook County 463 F.3d 773, 790 (7th Cir. 2006)(the conduct must be widespread to constitute a policy); Cosby v. Ward, 843 F.2d 967, 983 (7th Cir. 1988)(there must be more than one instance to state a policy); Gable v. City of Chicago, 296 F.3d 531, 538 (7th Cir. 2002)(three incidents was not enough to establish widespread practice); See also Golemine, Inc. v. Merrillville, 2011 U.S. Dist. LEXIS 15166, *20-21, Case No. 08 CV 145 (Rodovich, N.D. Ind. 02/14/2011)(referring to Phelan and Cosby in holding that a series of harassing activities and baseless nuisance tickets to one business was insufficient to establish a widespread pattern or custom). Meza cannot establish a widespread pattern or practice of discriminating against Hispanic liquor licenses, retaliating against liquor establishments that advertised in *El Dia*, or retaliating against liquor establishments owned by non-political supporters. See, e.g., Strauss v. City of Chicago, 760 F.2d 765, 769 (7th Cir. 1985); See also Estate of Moreland v. Dieter, 395 F.3d 747, 760 (7th Cir. 2005)(holding that had to produce enough incidents indicative of a policy by the jail of misuse of OC-10 pepper spray); Palmer v. Marion County, 327 F.3d 588, 595 (7th Cir. 2003)(holding that must show a custom of allowing inmates to fight or that the jail segregated inmates according to race); Gable v. City of Chicago, 296 F.3d 531 (7th Cir. 2002)(holding that must establish a pattern and practice of due process violations with respect to towing procedures); Cosby v. Ward, 843 F.2d 967, 983 (7th Cir. 1988)(holding that in order to establish liability for a 1983 due process allegation, the plaintiff had to show that IDES has a "custom or usage" of sending deficient notices).

Thus, summary judgment should be granted on widespread pattern and practice with respect to Monell.

WHEREFORE, Defendants respectfully request that summary judgment be granted with respect to all counts in Cases No. 11 CV 1702 and 5561.

Respectfully submitted,
Defendants

By: _/s/ Cynthia S. Grandfield_
    Cynthia S. Grandfield

K. Austin Zimmer
Cynthia S. Grandfield (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222-7000 (t)
(708) 222-7001 (f)